UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MANDIP K. SINGH,

                Plaintiffs,

-against-

KNUCKLES, KOMOSINSKI & MANFRO, LLP
and DEBBIE BHOORASINGH, individually,

                Defendant.

Case No.: 18-cv-3213

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE

Knuckles, Komosinski & Manfro, LLP
600 E. Crescent Ave., Suite 201
Upper Saddle River, NJ 07458
(201) 391-0370

John E. Brigandi, Esq.
On the Brief

### I. PRELIMINARY STATEMENT

Defendants Knuckles, Komosinski & Manfro, LLP ("KKM") and Debbie Bhoorasingh ("Bhoorasingh") (collectively, "Defendants") submit the instant memorandum of law in support of their motion in limine. By way of background, Plaintiff Mandip Singh ("Plaintiff") filed this action against Defendants for violations of Title VII of the Civil Rights Act of 1964, and the New York State Executive Law §296, whereby she contends that her employment at KKM was terminated by Defendants due to her pregnancy. Defendants have at all times denied that they have engaged in any discriminatory conduct, and further denied that Plaintiff satisfactorily performed her duties while employed by KKM.

Following denial of Defendants' motion for summary judgment (Exh. 2), this matter has been scheduled for trial on April 4, 2022, or April 11, 2022. In anticipation of trial, Defendants seek three orders from the Court precluding Plaintiff from providing testimony that lacks probative valude, and is substantially outweighed by its unfair prejudice to Defendants, and the potential to confuse and mislead the jury.

As set forth more fully below, Defendants seek to preclude Plaintiff from: (1) providing her own opinion testimony about her job performance while employed at KKM; (2) providing testimony concerning her anxiety, irritable bowl syndrome or any other medical diagnosis; and (3) providing testimony that she was medically required to be on bed rest during her pregnancy or physically undable to work during her pregnancy.

### III. LEGAL ARGUMENT

#### A. Legal Standard

Federal Rule of Evidence ("FRE") 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the

fact is of consequence in determining the action." Fed.R.Evid. 401. FRE 402 specifically provides that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; the [FRE]; or other rules prescribed by the Supreme Court. Fed.R.Evid. 402.

FRE 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. Luce v. United States, 469 U.S. 38, 40, n. 2 (1984); Palmieri v. Defaria, 88 F. 3d 136, 141 (2d Cir. 1996).

### B. **Plaintiff Should be Precluded From Offering Her Own Opinion Testimony Concerning Her Job Performance While Employed at KKM**

It is anticipated that Plaintiff will offer testimony concerning her own opinion of her job performance while she was employed at KKM. A plaintiff in an employment discrimination case has the initial burden of proving that (1) she was a member of the protected class; (2) *she satisfactorily performed the duties required by the position*; (3) she was discharged; and (4) under circumstances giving rise to an inference of discrimination. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995) (emphasis added). This Court previously determined that "Plaintiff's performance can be a factor in determining whether she is qualified for the position because performance reveals whether she has the requisite skills." (Exh. 2, p. 17 n. 13)

However, the case law is clear that a terminated employee's "perception of himself… is not relevant. It is the perception of the decision maker that is relevant." Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); Smith v. General Scanning, Inc., 876 F.2d 1315, 1322 (7th Cir. 1989); Dale v.

Chicago Tribune, 797 F.2d 458, 464-65 (7th Cir. 1986). See also Moylan v. National Westminster Bank, 687 F. Supp. 54, 59 (E.D.N.Y. 1988) ("It is the employer's perception of the plaintiff, not the plaintiff's perception of himself, that is relevant in determining whether plaintiff has shown pretext"); Rosen v. Columbia Univ., 1995 WL 464991, at * 7 (S.D.N.Y Aug. 7, 1995) ("it is the perception of the decision-maker, and not that of plaintiff, which is relevant"); Carlton v. Interfaith Medical Center, 612 F. Supp. 118, 122 (E.D.N.Y. 1985) ("Clearly, it is the perception of the decision-maker, and not that of plaintiff herself, which is relevant"); Crawford-Mulley v. Corning Inc., 194 F. Supp. 2d 212, 220 (W.D.N.Y. 2002) ("it was the perception of [] the decision-maker, which is relevant, not that of an outside consultant").

This is because, it is not the function of a fact-finder to second guess business decisions unless the employer's business decision was so lacking in merit as to call into question its genuineness. See Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988); see also Uranyi v. Multiplan, Inc., 2006 LEXIS 38979, *23 (E.D.N.Y. June 12, 2006) ("The Court recognizes, as urged by the defendant, that it should not second-guess a non-discriminatory business judgment of an employer and that where an employer's clear and specific explanation "is reasonably attributable to an honest even though partially subjective evaluation . . . of qualifications, no inference of discrimination can be drawn") *quoting* Lieberman v. Gaunt, 630 F.2d 60, 67 (2d Cir. 1980).

Here, Plaintiff's Complaint affirmatively alleges that she was an "exemplary employee." (Exh 1, ¶ 16[1])  Plaintiff additionally testified at her deposition that she was complimented by her supervisors for her work performance (Exh. 4, p. 86-87) Plaintiff further argued, in opposition to summary judgment, that prior to her pregnancy Defendants did not take issue with her absences

---

[1] Paragraph 40 of Plaintiff's Complaint additionally alleges that her performance was above average. (Exh. 1)

(Exh. 3, p. 8)   Even if true, which Defendants dispute, these types of statements should not be permitted at the time of trial as they are irrelevant. Flax, 618 F.2d at 1067; Smith, 876 F.2d at 1322. Notwithstanding the lack of probative value, such statements will unduly prejudice Defendants, and create confusion of the issues for the jury. FRE 403. Moreover, it has the potential to mislead the jury that Plaintiff satisfactorily performed her work duties, a necessary element of her case. Quaratino, 71 F.3d at 64.

### C. Plaintiff Should be Precluded From Offering Testimony Concerning Her Anxiety, Irritable Bowl Syndrome Or Any Other Medical Diagnosis

FRE 701 permits opinion testimony of lay witnesses where the testimony is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701(c).  During Plaintiff's deposition, she testified that she suffered from anxiety as a result of her termination from KKM, and that her irritable bowel syndrome ("IBS") worsened. (Exh. 4, p. 92, 42, 47-49, 96-97) She additionally submitted a Declaration in opposition to Defendants' motion for summary judgment providing that she suffers from IBS, and that it worsened during her pregnancy. (Exh. 9, ¶¶ 2-4)

However, both Anxiety[2] and IBS[3] are medical terms requiring testimony from an individual with specifialized knowledge to lay such a foundation, or from a treating medical professional. Thus, it is subject to FRE 702, no different than any other medical diagnosis. Plaintiff admittedly lacks any scientific or medical training, and lacks any basis to provide testimony concerning her IBS, her anxiety diagnosis or the medical treatment received, pursuant to either FRE 701(c) or FRE

---

[2] https://www.mayoclinic.org/diseases-conditions/generalized-anxiety-disorder/symptoms-causes/syc-20360803; https://www.mayoclinic.org/diseases-conditions/generalized-anxiety-disorder/diagnosis-treatment/drc-20361045; https://www.nimh.nih.gov/health/topics/anxiety-disorders.
[3] https://www.mayoclinic.org/diseases-conditions/irritable-bowel-syndrome/diagnosis-treatment/drc-20360064; https://www.niddk.nih.gov/health-information/digestive-diseases/irritable-bowel-syndrome/definition-facts; https://www.niddk.nih.gov/health-information/digestive-diseases/irritable-bowel-syndrome/diagnosis.

702. See also United States v. Flores, 945 F.3d 687, 707 (2d Cir. 2019) ("Part (c) of Rule 701 is intended to prevent a party from conflating expert and lay opinion testimony [and] thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 . . . .").

    Notwithstanding, Plaintiff's nurse practitioner advised she never treated Ms. Singh for anxiety until February 2019, at the very earliest. (Exh. 5, p. 39) This was nearly two years after Plaintiff's termination on July 21, 2017, and several months after she obtained new employment in or about November 2018. (Exh. 4, p. 7) She additionally testified that she was unaware of any other medical professional providing Ms. Singh with treatment for anxiety.[4] (Exh. 5, p. 40) Regardless, Ms. Kaur testified that the anxiety suffered was a result of Plaintiff's hyperthyroidism disorder. (Exh. 5, p. 45). This was corroborated by Plaintiff as well during her deposition, whereby she provided that it was her understanding that her hyperthyroid causes systems like anxiety. (Exh. 4, p. 43)

    Likewise, Ms. Kaur did not provide treatment to Plaintiff for IBS. During her deposition, she testified that although she provided her with a note excusing her from work because of abdominal pain based upon a telephone call from Plaintiff, she did not provide any treatment. Instead, she advised to make dietary changes, and referred her to the hospital and her OB/GYN as this treatment was out of her expertise. (Exh. 5, p. 56-58, 53-54) She additionally testified that Plaintiff sought medical treatment from a gastroenterologist for her IBS, but that she had never worked with that particular doctor. (Exh. 5, p. 38, 47, 53-54) Moreover, there has never been even one document submitted by Plaintiff during discovery indicating that she was actually diagnosed or treated for IBS.

---

[4] Plaintiff's Rule 26(a)(2)(C) expert disclosures identify Ms. Kaur as a treating medical professional. No other medical professionals are listed. (Exh. 6)

Based upon the foregoing, the probative value of any testimony concerning Plaintiff's anxiety or IBS is minimal, as it was admittedly not caused by Defendants' behavior. In contrast, allowing the testimony would potentially mislead the jury into believing that her termination was the cause of her anxiety or worsened her IBS, resulting in unfair prejudice to Defendants. See Fed.R.Evid. 403.

D. **Plaintiff Should be Precluded from Offering Testimony That She Was Medically Required To Be On Bed Rest During Her Pregnancy, or Physically Unable to Work During Her Pregnancy**

FRE 701 permits opinion testimony of lay witnesses where the testimony is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701(c). Plaintiff admittedly lacks any scientific or medical training, and is unable to offer any testimony outside of FRE 701. No different than Defendants' request to preclude testimony from Plaintiff concerning her anxiety or IBS, Defendants respectfully submit that Plaintiff lacks the requisite knowledge to provide testimony that she was medically required to be on bed rest during her pregnancy, or that she was physically unable to work during her pregnancy. See RFE 702, 701(c).

Plantiffff received two notes from her nurse practioner, and from her doctor, excusing her from work from June 5, 2017 through June 13, 2017, and June 19, 2017 through June 21, 2017, respectively. (Exh.'s 7 & 8[5]) The notes provide no further information concerning the medical basis for excusing Plaintiff from work. Instead, they simply provide a time frame that she was excused.

---

[5] Defendants have additionally objected to the inclusion of both medical notes, on authenticity grounds, in the proposed pretrial order (Dkt. 54, Pl. proposed exhibits P-11, P-12)

Plaintiff should not be afforded an opportunity to provide testimony concerning the medical basis that either Dr. Polakowski[6] or Ms. Kaur provided in excusing her from work. The notes themselves lack any information, and are not self authenticating. Plaintiff lacks any medical training, nor holds any specialized knowledge. FRE 702. Thus, any testimony provided by Plaintiff for the basis of these notes is outside the scope of her knowledge, and lacks foundation. Allowing such testimony from Plaintiff would create confusion of the issues, and potentially mislead the jury into believing that she had a medical reason prohibiting her from performing her duties at KKM, and excusing her absences.

Furthermore, Ms. Kaur did not provide Plaintiff with medical treatment for her pregnancy. (Exh. 5, p. 37, 58) Rather, Kaur testified that she provided a note excusing Plaintiff from work, based upon Plaintiff's complaint that she was suffering from abdominal pain. This was based solely upon one telephone call from Plaintiff. Ms. Kaur never provided treatment to Plaintiff, nor even saw her in person. (Exh. 5, p. 53-55, 81-84) As set forth previously, Ms. Kaur never treated Plaintiff for her IBS. (Exh. 5, p. 53-58)

## CONCLUSION

For the foregoing reasons, Defendants Knuckles, Komosinski & Manfro, LLP. and Debbie Bhoorasingh respectfully request that their motion in limine, be granted in its entierety.

DATED:  February 18, 2022

                                            Knuckles, Komosinski & Manfro, LLP.

                                            By: s/  John E. Brigandi
                                                JOHN E. BRIGANDI

                                            600 E Crescent Ave, Suite 201

---

[6] Plaintiff has not identified Dr. Polakowski, who wrote the June 19, 2017 note, as a witness for trial in the parties' proposed pretrial order (Dkt 54)  Nor did Plaintiff identify Dr. Polakowski as a treating medical professional in her expert disclosures (Exh 6). As such, Plaintiff lacks any factual or legal basis for including the June 19, 2017 note as an exhibit at the time of trial.

                                                                 Upper Saddle River, NJ 07458
                                                                 (201) 391-0532
                                                                 *jeb@kkmllp.com*